IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWRENCE BISS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GEHRING-MONTGOMERY, INC., ET AL. | : | NO. 16-4472 |

**MEMORANDUM**

**Padova, J.**                                                                                   May 22, 2017

Plaintiff Lawrence Biss has brought this action against Defendants asserting claims arising from the termination of his employment with Defendant Gehring-Montgomery, Inc. ("GMI"). Defendants Thomas Sprock and Oliver Zimmerman have moved to be dismissed as Defendants in this action, asserting that this Court lacks personal jurisdiction over them. For the reasons that follow, we deny the Motion.

**I.    FACTUAL BACKGROUND**

The Complaint alleges the following facts. GMI "is a distributor of specialty chemicals to commercial manufacturers in the automotive, coatings, adhesives, food and personal care industries." (Compl. ¶ 14.) It was founded by Ruth Gehring and managed by her for many years. (Id. ¶ 15.) Defendant TER Hell & Co., GmbH ("TER Hell") "is the parent company of a group [of] companies . . . that distribute, retail, and manufacture raw chemicals." (Id. ¶ 18.) In 1990, Defendant TER Holding, Inc., a subsidiary of TER Hell, acquired GMI. (Id. ¶ 19.)

Biss was hired by GMI on May 2, 1992 as the Purchasing Manager. (Id. ¶ 16.) He became the Managing Director of GMI in January 1996 and was responsible for running the company and its sales operations. (Id. ¶ 17.) On December 20, 1995, GMI and Biss entered into an employment agreement (the "Employment Agreement"). (Id. ¶ 20.) Under the Employment

Agreement, Biss was entitled to the following compensation: "salary . . . , reimbursement of business expenses, a new automobile at company expense every three years, profit sharing equal to 10% of the company's net profits before taxes and executive compensation, 401(k) plan contributions by the company equal to 4% of his [salary], medical insurance, and vacation of 25 days annually." (Id. ¶ 22(a).) In addition, pursuant to the Employment Agreement, Biss's employment with GMI could only be terminated upon his death, or disability, for just cause, or with 12 months' notice. (Id. ¶ 22(b).) Just cause is defined in the Employment Agreement as "a repeated and substantial failure to perform his duties after specific written notice of the failure; frequent absences without satisfactory explanation; 'material misconduct;' or 'conviction of a felony.'" (Id. ¶ 22(c).) The Employment Agreement also provided that Biss was entitled to severance pay upon expiration of the Agreement in the amount of one month of salary for every year of his service to the company beginning on January 1, 1996. (Id. ¶ 22(d).)

Biss was born in 1955 and was 61 years old when he filed the Complaint. (Id. ¶ 23.) Gehring was born in 1944 and was 72 years old when Biss filed the Complaint. (Id. ¶ 24.) Beginning in 2011, the management of TER Hell made it clear that it wanted to hire younger managers to replace Gehring and Biss. (Id. ¶ 25.) In the summer of 2015, all of the Defendants, except Mark Bitting, informed Biss that his position would be terminated and that his duties would be distributed to Thomas Sprock,[1] Oliver Zimmerman,[2] and his replacement. (Id. ¶ 26.) Biss was also notified that he "would be required to interview and train his replacement." (Id.) Biss informed Sprock and Zimmerman that his termination violated the federal Age

---

[1]Defendant Thomas Sprock is the Secretary of GMI and Chief Financial Officer of TER Hell. (Compl. ¶ 5.)

[2]Defendant Oliver Zimmerman is the President of GMI and the Chief Executive Officer of TER Hell. (Compl. ¶ 6.)

2

Discrimination in Employment Act ("ADEA"). (Id. ¶ 27.) At the end of 2015, the company terminated Gehring because of her age. (Id. ¶ 28.)

On January 1, 2016, Biss's Employment Agreement was terminated, his position was eliminated, and his duties were assigned to Bitting,[3] Sprock, and Zimmerman, all of whom are younger than Biss. (Id. ¶ 29.) Biss was assigned to a meaningless position with little responsibility "but high visibility to customers and existing employes." (Id. ¶ 30.) This reassignment "was an affront and an embarrassment" to Biss and was intended to cause Biss to resign and relieve GMI of its obligation to pay him severance in accordance with the Employment Agreement. (Id.) Nevertheless, Biss did not quit. (Id. ¶ 32.)

Defendants subsequently engaged BDO Seidman ("BDO") to perform an audit of GMI. (Id.) Defendants engaged BDO to find a reason to fire Biss that would not require the payment of his severance pay. (Id. ¶ 33.) During its audit of GMI, representatives of BDO told GMI employees, ex-employees, and third parties that Biss was guilty of "theft, crimes, incompetence at his trade or profession, and dishonesty." (Id. ¶ 34.) These representations were false and Defendants knew that they were false. (Id. ¶¶ 35-36.) On July 7, 2016, Biss's employment was terminated. (Id. ¶ 38.) Defendants gave numerous false reasons for terminating Biss's employment in order to "(a) mask the age discrimination of the Defendants; (b) retaliate against Mr. Biss for asserting his contractual and statutory rights, and (c) . . . attempt to justify the failure to pay him the severance pay package required by his contract." (Id. ¶ 39.) Only Sprock gave a valid reason for Biss's termination, when he told Biss: "[w]e tried to settle things with you but you made all of these claims for severance and discrimination that we had no other choice but to terminate you. You won't get any severance pay now." (Id. ¶ 40.) As of the date of his

---

[3]Defendant Mark Bitting is the Managing Director for Sales and Purchasing of GMI. (Compl. ¶ 7.)

3

termination of employment, Biss had worked for GMI for more than 24 years and was entitled to 26 months of pay as severance under the Employment Agreement. (Id. ¶ 42.) GMI did not give Biss his severance payments. (Id. ¶ 43.) In addition, pursuant to GMI's policy of paying unused vacation pay to employees whom it terminates, Biss was entitled to be paid for four weeks of vacation pay that he earned in 2015 and 2.8 weeks of vacation pay that he earned in 2016, with a total value of $33,000. (Id. ¶¶ 44-45.) Biss was not paid for his unused vacation time. (Id. ¶ 46.)

The Complaint asserts five claims. Count I asserts a claim against all Defendants for age discrimination pursuant to the ADEA, 29 U.S.C. § 623, and alleges that Biss was first demoted and then terminated because of his age and because he had asserted that he was being discriminated against on the basis of his age. Count II asserts a claim against all Defendants for retaliation for Biss's assertion of his rights under the ADEA. Count III asserts a claim against all Defendants under the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. § 260.1, *et seq.* (the "WPCL"), for Biss's unpaid severance, notice, and vacation pay provided for under his Employment Agreement. Count IV asserts a state common law claim for breach of contract against GMI, TER Hell, and TER Holding for breach of the Employment Agreement. Count V asserts a state common law claim for defamation against GMI, TER Hell, TER Holding, Sprock, and Zimmerman arising from the false statements made by Defendants and their agents regarding Biss. Sprock and Zimmerman have moved to dismiss all of the claims asserted against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## II. LEGAL STANDARD

"'[C]ourts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the

4

plaintiff.'" Bootay v. KBR, Inc., 437 F. App'x 140, 143 (3d Cir. 2011) (alteration in original) (quoting Carteret Savs. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). The plaintiff, however, "bears the burden of proving that the court has personal jurisdiction over the defendant by a preponderance of the evidence," Allaham v. Naddaf, 635 F. App'x 32, 37 (3d Cir. 2015) (citations omitted), and "may not rest solely on the pleadings to satisfy this burden." Gutierrez v. N. Am. Cerruti Corp., Civ. A. No. 13-3012, 2014 WL 6969579, at *2 (E.D. Pa. Dec. 9, 2014) (citing Simeone ex re. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH, 360 F. Supp. 2d 665, 669 (E.D. Pa. 2005); and Carteret Savs. Bank, 954 F.2d at 146). Rather, "[o]nce the defense has been raised, . . . 'the plaintiff must sustain [his] burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence . . . .'" Int'l Bhd. of Elec. Workers Local Union No. 126 Ret. Plan Tr. Fund v. Cablelinks, Inc., Civ. A. No. 15-1925, 2015 WL 8482831, at *1 (E.D. Pa. Dec. 10, 2015) (quoting Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

## III. DISCUSSION

Sprock and Zimmerman argue that we should dismiss them as Defendants to this action because they are German, do not reside in Pennsylvania, and "have never purposefully availed themselves to [sic] the jurisdiction of this Court." (Defs.' Mem. at 3.) "Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal jurisdiction according to the law of the state where it sits." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (citing Fed. R. Civ. P. 4(k)(1)(A)); see also Fed. R. Civ. P. 4(k)(1) ("Serving a summons . . . establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . ."). "Pennsylvania's long-arm statute permits courts to exercise personal jurisdiction over

5

nonresident defendants 'to the fullest extent allowed under the Constitution of the United States' and 'based on the most minimum contact with this Commonwealth allowed under the Constitution.'" Ackourey v. Sonellas Custom Tailors, 573 F. App'x 208, 211 (3d Cir. 2014) (quoting 42 Pa. Cons. Stat. Ann. § 5322(b)). "Accordingly, in determining whether personal jurisdiction exists, we ask whether, under the Due Process Clause, the defendant has 'certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" O'Connor, 496 F.3d at 316-17 (alterations in original) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction, general and specific. Id. at 317 (citing Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984)). "General jurisdiction exists when the plaintiff's claim arises out of the defendant's 'continuous and systematic' contacts with the forum state. General jurisdiction exists even if the cause of action is unrelated to the defendant's activities in the forum state." Rocke v. Pebble Beach Co., 541 F. App'x 208, 210 (3d Cir. 2013). "Specific jurisdiction exists when the plaintiff's claim arises out of the defendant's activities within the forum such that the defendant could reasonably anticipate being haled into the state's courts." Id. (citing Vetrotex Certainteed Corp. v. Consl. Fiber Glass Prods. Co., 75 F.3d 147 (3d Cir. 1995)).

Plaintiff maintains that we have specific personal jurisdiction over Sprock and Zimmerman in this case.[4] "In determining whether there is specific jurisdiction, we undertake a three-part inquiry." D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009). "First, the defendant must have 'purposefully directed [its] activities' at the

---

[4]Plaintiff also argues that we have general jurisdiction over Sprock and Zimmerman as a result of their continuous and substantial contacts with Pennsylvania. However, since we have specific jurisdiction over Sprock and Zimmerman, see infra at 11, we need not address this argument.

forum." Id. (alteration in original) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." Id. (quoting Helicopteros Nacionales, 466 U.S. at 414; and O'Connor, 496 F.3d at 317). "And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" Id. (alteration in original) (quoting Burger King, 471 U.S. at 476).

A defendant who opposes the exercise of personal jurisdiction on the ground that it would not "comport[] with fair play and substantial justice," id. (quotation omitted), "must present a 'compelling case that the presence of some other considerations would render the jurisdiction unreasonable' because once minimum contacts have been established jurisdiction is presumptively constitutional." Isaacs v.Trustees of Dartmouth Coll., Civ. A. No. 13-5708, 2014 WL 4186536, at *8 (E.D. Pa. Aug. 25, 2014) (quoting O'Connor, 496 F.3d at 324; and citing Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 207 (3d Cir. 1998)), aff'd sub nom. Isaacs v. Arizona Bd. of Regents, 608 F. App'x 70 (3d Cir. 2015). "The Supreme Court has looked to several factors to determine whether fairness enables or strips jurisdiction." Id. "These factors include: 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies . . . and the procedural and substantive interests of other nations.'" Id. (alterations in original) (quoting O'Connor, 496 F.3d at 324).

Biss has submitted a Declaration in which he lists Sprock's and Zimmerman's activities in this Commonwealth that gave rise to the claims asserted in the Complaint. Biss states in his Declaration that, in early April 2015, "Zimmerman visited GMI's offices in Warminster,

7

[Pennsylvania] for at least two days." (Biss Decl. ¶ 10.) While Zimmerman was in Pennsylvania, he informed Biss that "as of January 1, 2015, he was in charge of Ter Hell's subsidiaries, including GMI, and [Biss] was to report directly to Zimmerman and Sprock concerning GMI." (Id.) In February of 2016, Zimmerman again visited GMI in Warminster and met with Biss. (Id. ¶ 12.) During this visit, Zimmerman spoke to Biss about Mark Bitting, who had been hired as GMI's Director of Sales the previous month, and about Biss's "role and responsibilities, and [his] employment agreement." (Id. ¶¶ 11-12.) "In March 2016, Ter Hell announced that Zimmerman was now President of GMI and that Sprock was now the company's Secretary." (Id. ¶ 14.) The following month, Sprock visited GMI's offices in Warminster, Pennsylvania for two or three days, "accompanied by a BDO Seidman employee." (Id. ¶ 15.) Sprock "explained that BDO had been engaged to perform a 'compliance audit' of GMI." (Id.) On July 7, 2016, while Sprock was visiting GMI's offices in Warminster, Pennsylvania, he called Biss "into a meeting with Mr. Bitting and terminated [Biss's] employment with GMI." (Id. ¶ 16.) Sprock and Zimmerman were involved in "the decision not to pay [Biss's] wages in breach of [his] employment agreement." (Id. ¶ 18.) We conclude, accordingly, that the Biss Declaration establishes that Sprock and Zimmerman purposely directed their activities at Pennsylvania by visiting this Commonwealth on multiple occasions and that Biss's claims arise out of their activities in the Commonwealth during those visits.

Sprock and Zimmerman argue, however, that we may not subject them to specific personal jurisdiction in Pennsylvania because all of the actions they took in Pennsylvania in connection with Biss's claims were taken in their official capacities on behalf of their employers GMI, TER Hell, and TER Holding, which are also Defendants in this case. Sprock and

Zimmerman maintain that they are not subject to specific personal jurisdiction in Pennsylvania under these circumstances because they are protected by the corporate shield doctrine.

Under the corporate shield doctrine, "'[i]ndividuals performing acts in a state in their corporate capacity are not subject to personal jurisdiction of the courts of that state for those acts.'" Kappe Assocs., Inc. v. Chesapeake Envtl. Equip., LLC, Civ. A. No. 15-2211, 2016 WL 4538806, at *6 n.12 (E.D. Pa. Aug. 31, 2016) (quoting Bowers v. NETI Techs,, Inc., 690 F. Supp. 349, 357 (E.D. Pa. 1988)). "[T]he purpose of the 'corporate shield' doctrine is to protect corporate officers and directors from being haled into court and exposed to personal liability in each state that the corporation does business based solely upon their status as corporate officers and directors." Maleski by Taylor v. DP Realty Trust, 653 A.2d 54, 63 (Pa. Commw. Ct. 1994) (quoting Central Pa. Teamsters Pension Fund v. Burten, 634 F. Supp. 128 (E.D. Pa. 1986)). However, the corporate shield doctrine "may be overcome in two ways: 1) a corporate agent may be held personally liable for torts done in a corporate capacity within the forum; and 2) by violating a statutory scheme that provides for personal, as well as corporate, liability." Universal Steel Bldgs. Corp. v. Shore Corp. One, Civ. A. No. 09-0656, 2010 WL 1142039, at *5 (W.D. Pa. Mar. 24, 2010) (citing Nat'l Precast Crypt Co. v. Dy-Core of Pa., Inc., 785 F. Supp. 1186, 1191 (W.D. Pa. 1992)).

Biss does not dispute Sprock and Zimmerman acted in in their corporate capacities in Pennsylvania. However, he contends that the corporate shield doctrine does not apply in this case because Count III of the Complaint asserts a claim against Sprock and Zimmerman under the WPCL, which provides for personal as well as corporate liability for certain corporate officers. The WPCL provides that "[a]ny employee . . . to whom any type of wages is payable may institute actions provided under this act." 43 Pa. Stat. Ann. § 260.9a(a). The WPCL defines

9

the term "wages" to "[i]nclude[] all earnings of an employee . . . includ[ing] fringe benefits or wage supplements . . . ." 43 Pa. Stat. Ann. § 260.2a. The term "Fringe benefits or wage supplements" is defined to encompass "separation, vacation, holiday, or guaranteed pay . . . and any other amount to be paid pursuant to an agreement to the employe [sic] . . . ." Id. We conclude that the WPCL thus encompasses Biss's claim for unpaid severance, notice and vacation pay.

The WPCL also defines the term "[e]mployer" to include agents and officers of corporations employing persons in Pennsylvania. Id. However, an officer of a corporation cannot be sued under the WPCL solely by virtue of his or her position. "Rather, to hold an 'agent or officer' personally liable for unpaid wages under the WPCL, 'evidence of an active role in decision making is required.'" Mancini v. Concorde Grp., No. 2233 EDA 2013, 2234 EDA 2013, 2014 WL 10575398, at *10 (Pa. Super. Ct. Sept. 25, 2014) (quoting Hirsh v. EPL Techs., Inc., 910 A.2d 84, 88 (Pa. Super. Ct. 2006)). "Specifically, an employee must establish that the 'agent or officer' was 'actively involved in corporate policy-making, such as corporate decision-making or corporate advisement on matters of pay or compensation.'" Id. (quoting Hirsh, 910 A.2d at 88). Biss states in his Declaration that both Sprock and Zimmerman were actively involved in the corporate decision making that resulted in his termination as an employee of GMI and alleges in the Complaint that the decision to terminate him was made, in part, to prevent his obtaining the severance pay he was owed. (See Biss Decl. ¶ 18; Compl. ¶ 40.) Therefore, the record before us contains evidence that would support holding both Sprock and Zimmerman liable for Biss's unpaid wages under the WPCL. We conclude, accordingly, that the corporate shield doctrine has been overcome in this case because the Complaint alleges a claim against Sprock and Zimmerman for violation of a statute "that provides for personal, as well as

corporate, liability." Universal Steel Bldgs. Corp., 2010 WL 1142039, at *5 (citation omitted). We further conclude that we have specific jurisdiction over both Sprock and Zimmerman in this case based on their alleged activities in this Commonwealth that gave rise to Biss's claims.

## IV. CONCLUSION

For the reasons stated above, we deny Sprock and Zimmerman's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.